

CASE CLOSED

DATE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD D. CARLISLE, Jr.,

Petitioner,

v.

KURT JONES,

Respondent,
_______________________________/

Civil No. 03-CV-74236-DT
HONORABLE DENISE PAGE HOOD
UNITED STATES DISTRICT JUDGE

FILED 2005 MAY 24 P 4:05

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS**

Edward D. Carlisle, Jr., ("Petitioner"), presently confined at the Saginaw Correctional Facility in Freeland, Michigan, has filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his state court convictions for operating a motor vehicle while under the influence of liquor (O.U.I.L.), third offense, M.C.L.A. 257.625; driving while license suspended, M.C.L.A. 257.317; resisting and obstructing a police officer while effectuating an arrest, M.C.L.A. 324.1608; and being a fourth felony habitual offender, M.CL.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**

## I. Background

Petitioner was convicted of the above offenses following a jury trial in the Tuscola County Circuit Court. Due to the brevity of petitioner's application for writ of habeas corpus, this Court is willing to incorporate the facts and arguments raised

in petitioner's state appellate court pleadings which are included in the Rule 5 materials provided by respondent as being part of petitioner's application for writ of habeas corpus. *See e.g. Burns v. Lafler,* 328 F. Supp. 2d 711, 717, n. 2. (E.D. Mich. 2004). The Court will also accept the factual allegations contained within the habeas petition and the attached pleadings because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").

On February 27, 1999, at approximately 10:30 a.m., Ms. Lucille Trickey and her mother were traveling on M-46 in Tuscola County, when Ms. Trickey noticed a pickup truck approaching M-46 on Kirk Road. The truck did not stop at the stop sign on Kirk Road, turning right in front of Ms. Trickey's vehicle. Ms. Trickey's vehicle collided with the truck. As Ms. Trickey exited her car to check on her mother's condition, she noticed two men picking up beer bottles from the road. The driver of the pickup truck then left the scene of the accident.

Jerry and Robert McGregor witnessed the accident. Jerry McGregor identified petitioner as being the driver of the pickup truck that collided with Ms. Trickey's car. Ms. McGregor observed petitioner and another man collecting beer bottles from the road and throwing them into the bed of the truck. Ms. McGregor testified that she spoke with petitioner and he appeared to be very intoxicated, noting that petitioner was unsteady on his feet.

After hearing that the police had been called, petitioner got into his truck and left the accident scene. Mr. McGregor got into his vehicle and followed petitioner, obtaining a partial license plate number from the truck.

Trooper Larissa LaMay of the Michigan State Police was one of the officers who responded to the accident. Trooper LaMay was informed that the truck which had been involved in the accident had just turned into a driveway near the accident scene. Trooper LaMay, and another state police officer, Trooper Robert Dunham, followed the tire tracks and debris left by the pickup truck to a residence. In the garage of the residence, the troopers located a man who was later identified as being the passenger of the pick-up truck. The pick-up truck was located in the woods near the house. The police searched the garage, house, and the area near the house but could not locate petitioner. Trooper Steve Escott from the K-9 unit was called to the scene. Trooper Escott located petitioner hiding in a crawl space beneath the home. Petitioner refused to come out until Escott threatened to send the police dog in after him. While petitioner was being searched, he began flailing his arms, cursing, and pushing the officers. Petitioner had to be handcuffed to complete the patdown.

Petitioner refused a preliminary breath test (PBT) and refused to take a breathalyzer test when he was brought to the Tuscola County Jail. At 1:18 p.m., blood was taken from petitioner per a court order. The results of the test indicated that petitioner's blood alcohol content at the time that his blood was drawn was .23.

While housed at the Tuscola County Jail, petitioner told a corrections officer that "It's (sic) doesn't pay to drink and drive" and "I guess I really done it this time."

The prosecution called Dr. Julia Pearson as an expert witness on the issue of retrograde extrapolation of a person's blood alcohol level. Dr. Pearson testified that she was able to extrapolate a person's blood alcohol level two and one half hours after an accident, even if she did not know what that person had done after the accident. Dr. Pearson testified that she extrapolated petitioner's blood alcohol level to be between .22 and .27 at the time of the accident. Dr. Pearson admitted, however, that there was an ongoing debate amongst toxicologists about whether a person could perform an accurate retrograde extrapolation of a person's blood alcohol content level.

Petitioner called his own expert witness, Dr. David Schneider, to challenge Dr. Pearson's retrograde extrapolation of petitioner's blood alcohol content. Dr. Schneider testified that it was next to impossible to retroactively establish a person's blood alcohol content.

Petitioner was convicted of the charges. Petitioner's appellate counsel raised the following issue in his appeal of right with the Michigan Court of Appeals:

> I. An expert opinion must be based on a scientific technique that is generally accepted as reliable in the relevant scientific community, therefore the testimony of the prosecution's expert was inadmissible denying defendant/appellant a fair trial.

Petitioner also raised the following claim in a *pro se* supplemental brief:

> I. An attorney has a duty as a matter of law to disclose and discuss with his client any good faith [plea] offers.

The Michigan Court of Appeals affirmed petitioner's conviction with respect to the expert witness issue, but remanded the matter to the trial court for consideration of his ineffective assistance of trial counsel claim. *People v. Carlisle,* 223727 (Mich.Ct.App. November 13, 2001).

On remand, an evidentiary hearing was conducted on December 13, 2001 in the trial court on petitioner's ineffective assistance of counsel claim. At the evidentiary hearing, petitioner claimed that his attorney informed him that the prosecutor had offered a plea bargain where petitioner would plead guilty to O.U.I.L., third offense, and to having three prior felony convictions, in exchange for dismissal of the additional charges. Petitioner claimed that his counsel mistakenly advised him that the plea bargain offer was illusory, because it still placed petitioner at the risk of a life sentence. Petitioner also claimed that his counsel incorrectly advised him that under the terms of the plea bargain, petitioner faced a minimum sentence of fifteen years in prison.

On cross-examination, however, petitioner indicated that he was present at a pre-preliminary examination conference conducted on March 15, 1999, where he heard the prosecutor indicate that the plea offer was for petitioner to plead guilty to O.U.I.L., third offense, and to having two prior felony convictions, that is, to being a third felony habitual offender. Petitioner claimed that he did not know that the plea

offer also called for him to plead guilty to resisting and opposing a police officer and to being a fourth felony habitual offender. Petitioner acknowledged being in circuit court on September 17, 1999 for a hearing on his motion to remand the case to the district court for a preliminary examination. Petitioner claimed that part of the reason that his defense counsel filed a motion to remand was because his counsel misunderstood the plea bargain offer, believing that the offer was for petitioner to plead guilty to O.U.I.L., third offense, and being a fourth felony habitual offender. Petitioner admitted, however, that he pleaded guilty to O.U.I.L., third offense and to being a third felony habitual offender in 1998. On further cross-examination, petitioner admitted that he indicated in his *pro per* supplemental appellate brief that his trial counsel had advised him that the offer was for petitioner to plead guillty to O.U.I.L., third offense and to being a third felony habitual offender. Petitioner acknowledged that at the hearing on the motion to remand, he recalled the trial court stating that there would be a tremendous benefit to him pleading guilty to O.U.I.L., third offense and to being a third felony habitual offender, because petitioner faced a maximum penalty of ten years on the O.U.I.L. charge if he pleaded guilty, but faced a possible life sentence if he went to trial and was convicted.

Mark Reene testified that he was the chief assistant prosecuting attorney for Tuscola County. Reene was present at the pre-preliminary examination conference, which is a procedure held to discuss plea negotiations in a criminal case. Reene testified that he extended a plea offer to petitioner to plead guilty to O.U.I.L., third

offense, plus two felonies, and to plead guilty to resisting and obstructing a police officer plus three prior felony offenses. Petitioner was sitting five to six feet away from Reene when he heard this offer made. Petitioner was not represented by counsel at the pre-preliminary examination conference. Petitioner appeared with counsel at the preliminary examination on March 26, 1999, where the plea offer was again extended to petitioner. Reene indicated that he explained to petitioner's counsel that petitioner would plead guilty to O.U.I.L., third offense and to having two prior felony convictions, which would call for a ten year maximum sentence on this charge, and to resisting and opposing a police officer, with three prior felony convictions, which would call for a fifteen year maximum sentence. Reene testified that pursuant to this offer, petitioner and his counsel waived the preliminary examination. Reene testified that he had subsequent telephone conversations with petitioner's counsel concerning the plea offer and that the offer never changed. Reene testified that to the best of his recollection, the plea offer remained open until trial and was never revoked.

James Robert Reed was the prosecuting attorney for Tuscola County. Reed met with petitioner's counsel at a pre-trial conference at the Tuscola County Circuit Court. Prior to the pre-trial conference, Reed made the same plea bargain offer to petitioner's counsel that had previously been made in this case by Mark Reene. Reed testified that the plea offer was explained on the record at the hearing on petitioner's motion to remand for a preliminary examination on September 17, 1999.

At the conclusion of the evidentiary hearing, the trial court found that the plea agreement had been accurately communicated to petitioner by both defense counsel and the prosecutor and that petitioner understood the plea agreement. (T. 12/13/2001, pp. 44-49); *See also People v. Carlisle,* 99-7518-FH (Tuscola County Circuit Court, January 3, 2002). After remand, the Michigan Court of Appeals affirmed the trial court's findings with respect to petitioner's ineffective assistance of trial counsel claim. *People v. Carlisle,* (After remand) 223727 (Mich.Ct.App. January 25, 2002).

Petitioner then filed a *pro se* application for leave to appeal to the Michigan Supreme Court, which was denied by the Michigan Supreme Court on October 29, 2002. *People v. Carlisle,* 467 Mich. 891; 653 N.W. 2d 409 (2002).

Petitioner subsequently filed the instant petition for writ of habeas corpus, raising the following claims for relief:

> I. The expert opinion [must] be based in (sic) a scientific technique that is generally accepted as reliable in the relevant scientific community, therefore the testimony of the prosecutor's expert was inadmissible, denying petitioner a fair and impartial trial.
>
> II. The trial attorney had a duty as a matter of law to advise this petitioner of the correct plea agreement (in essence, a (sic) ineffective assistance of counsel claim).
>
> III. This petitioner was denied the effective assistant (sic) of appellate counsel on direct appeal which prejudiced petitioner on this appeal as of right.

Respondent filed an answer to the petition, urging this Court to dismiss the

petition for writ of habeas corpus because petitioner's third claim had not been exhausted with the Michigan courts. Petitioner subsequently filed a motion to amend his habeas petition to delete his third unexhausted claim. On February 23, 2005, this Court granted petitioner's motion to amend the petition to delete the unexhausted claim and ordered a supplemental answer from respondent which addressed petitioner's two exhausted claims. Respondent filed a supplemental answer with this Court on March 23, 2005. On May 10, 2005, Petitioner filed a "Rebuttal" to Respondent's Opposition to Petitioner of Habeas Corpus.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court

on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

**III. Discussion**

**A. Claim # 1. The expert witness claim.**

Petitioner initially claims that the state trial court erred when it permitted Dr. Julia Pearson to offer expert testimony on the issue of retrograde extrapolation of petitioner's blood alcohol level, because the prosecutor failed to show that retrograde extrapolation of a person's blood alcohol level has been generally accepted by the relevant scientific community as being a reliable procedure. Respondent contends that this claim is procedurally defaulted because petitioner failed to object to Dr. Pearson's testimony at trial on this issue.

Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F. 3d 1155, 1162

(8th Cir. 1999)(internal citations omitted). In this case, because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claim, that there is no procedural default by petitioner and will decide the merits of the claim. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003).

Federal habeas corpus relief does not lie for errors of state law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). Errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

The admission of expert testimony in a state trial presents a question of state law which does not warrant federal habeas relief, unless the evidence violates due process or some other federal constitutional right. *See Keller v. Larkins,* 251 F. 3d 408, 419 (3rd Cir. 2001). In this case, petitioner relies primarily on the United States Supreme Court case of *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) in support of his claim. However, the Supreme Court's holding in *Daubert* concerned the application of the Federal Rules of Evidence, which are not relevant to determining the constitutionality of a state court conviction. *See Norris v. Schotten,* 146 F. 3d 314, 335 (6th Cir. 1998). In addition, as a state evidentiary matter, petitioner has presented no argument to show that Dr. Pearson's testimony on retrograde extrapolation was admitted in error nor any reason to believe that this testimony denied petitioner a fundamentally fair trial. *Id.* Petitioner's counsel was

able to cross-examine Dr. Pearson about her methodology and Dr. Pearson admitted that there was an ongoing debate in the scientific community about the reliability of retrograde extrapolation of blood alcohol results. Moreover, any error in permitting Dr. Pearson to offer opinion evidence about retrograde extrapolation was rendered harmless in this case by virtue of the fact that petitioner's own expert testified and discredited the scientific reliability of retrograde extrapolation. *See Ford v. Seabold,* 841 F. 2d 677, 693 (6th Cir. 1988). Finally, as the Michigan Court of Appeals indicated, the retrogade extrapolation of petitioner's blood alcohol level was unnecessary because under Michigan law, if there are more than .10 grams of alcohol per 100 milliliters of blood at the time of the test, there is a presumption that the defendant was under the influence of liquor at the time of the offense. *See People v. Campbell,* 236 Mich. App. 490, 496-97; 601 N.W. 2d 114 (1999). Therefore, blood alcohol test results in Michigan are statutorily deemed to relate back to the time of the alleged offense. *Id.* Because petitioner's blood alcohol level at the time of his blood test was .23, there was sufficient evidence for the jury to have convicted petitioner of operating under the influence of liquor even absent Dr. Pearson's testimony concerning retrograde extrapolation. Petitioner is therefore not entitled to habeas relief on his first claim. [1]

---

[1] Although not dispositive to this issue, the Court notes that at least one federal court has admitted retrograde extrapolation testimony to prove that a person was driving while intoxicated. *See In Re Dale,* 199 B.R. 1014, 1022 (Bankr. S.D. Fla. 1995)(using retrograde extrapolation testimony to support finding that debtor was driving while intoxicated, so as to hold that state court wrongful death judgment against Chapter 7 debtor resulting from hit and run drunk driving accident was nondischargeable under discharge exception for debt incurred as result of driving while intoxicated).

**B. Claim # 2. The ineffective assistance of trial counsel claim.**

Petitioner next claims that his trial counsel failed to accurately convey the terms of the plea agreement offered by the prosecutor in this case, and that but for counsel's mistaken advice about the terms of the plea agreement, petitioner would not have gone to trial, but would have instead accepted the plea agreement.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.

An incompetently counseled decision to reject a plea offer and go to trial falls within the range of protection provided by the Sixth Amendment. *Turner v. State of Tennessee*, 858 F. 2d 1201, 1205 (6th Cir.1988), *vacated on other grounds*, 492

U.S. 902 (1989). A habeas petitioner who claims that his trial counsel gave him gross misadvice about whether to accept or reject a plea offer must prove: (1) that his counsel's performance was objectively deficient, and (2) that but for his counsel's erroneous advice, there is a reasonable probability that he would not have accepted the plea. *See Magana v. Hofbauer,* 263 F. 3d 542, 550 (6th Cir. 2001). A habeas petitioner's testimony, however, by itself, would be subjective, self-serving, and insufficient to satisfy the *Strickland* standard for proving this type of claim. *See Turner v. State of Tennessee*, 858 F. 2d at 1206.

As an initial matter, this Court notes that the state trial court conducted an evidentiary hearing on petitioner's ineffective assistance of counsel claim on remand from the Michigan Court of Appeals and determined that the plea bargain offer was conveyed to petitioner, that petitioner's defense counsel understood the terms of the plea agreement, and that counsel properly advised petitioner as to the terms of the plea agreement. In ruling on petitioner's claim that his state trial attorney was ineffective for failing to properly advise him regarding the plea offer, this Court affords the presumption of correctness to the state trial court judge's factual finding that petitioner was aware of and understood the state's plea offer, in light of the fact that this judge was the same judge who presided over petitioner's trial, as well as the fact that the judge's finding was in the nature of a credibility determination based on the competing statements of petitioner and the two prosecuting attorneys in this case. *See Galvan v. Cockrell,* 293 F. 3d 760, 763-64

(5th Cir. 2002). Simply put, the state trial court was entitled to disbelieve petitioner's self-serving testimony that counsel failed to properly advise him regarding the terms of the plea agreement offered by the prosecutor, and petitioner's self-serving statements were insufficient to overcome the presumption of regularity accorded state convictions or to warrant a conclusion by this Court that the state court judge's findings were based on an unreasonable determination of the evidence, so as to warrant federal habeas relief. *See Riggins v. Norris,* 238 F. 3d 954, 955-56 (8th Cir. 2001).

Moreover, assuming that counsel gave erroneous advice concerning the terms of the plea agreement, petitioner was not prejudiced by any misinformation from trial counsel about the potential plea agreement where the trial court clarified the correct terms of the plea agreement and petitioner's sentencing exposure at the hearing on the motion to remand, thus precluding a showing of ineffective assistance of counsel. *See Morrow v. Giambruno,* 2004 WL 375098, * 3 (S.D.N.Y. March 1, 2004). Moreover, petitioner's claim that he was unaware of the penalty for O.U.I.L., third offense and being a third felony habitual offender is not credible in light of the fact that he had pleaded guilty to this same charge only a year prior to his trial on the current charges. *Cf. United States v. Young,* 927 F. 2d 1060, 1063-46 (8th Cir. 1991)(any error caused by district court's failure to advise defendant, who pled guilty, of statutory maximum and minimum sentences to which he was subject was harmless, where the evidence indicated that defendant actually

knew of the statutory maximum and minimum sentences). Petitioner is not entitled to habeas relief on his second claim.

## IV. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DISMISSED WITH PREJUDICE.**

**HON. DENISE PAGE HOOD**
UNITED STATES DISTRICT COURT

DATED: MAY 24 2005